Aisha Tinker Bray
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Anchorage, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Casualty Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TANISHA BOZEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PROGRESSIVE CASUALTY ) | 3:05-cv-178-JKS |
| INSURANCE COMPANY and ) | |
| INTEGRITY INSURANCE ) | |
| AGENCY, LLC ) | |
| ) | |
| Defendant. ) | |

REPLY TO OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

     Ms. Bozeman's attorney, Dennis Maloney, maintains that he did not have Ms. Bozeman's authority to settle her claim for $25,350 and, therefore, that he did not convey her agreement to settle at that amount during conversations with Progressive's attorney, Gary Zipkin. However, completely missing from Mr. Maloney's affidavit and Ms. Bozeman's opposition is any explanation of what occurred during the phone conversation between Gary Zipkin and Dennis Maloney on January 3, 2006.

USDC Case No. 3:05-cv-178-JKS   Bozeman v. Progressive Casualty
Reply to Opposition to Motion to Enforce Settlement
Page 1 of 11

The key questions which are ignored by Ms. Bozeman's opposition and Mr. Maloney's affidavit include the following:

1. Does Mr. Maloney admit that he and Mr. Zipkin discussed settlement for a second time on January 3, 2006?

2. Does Mr. Maloney admit that Mr. Zipkin told him during that conversation that Progressive had authorized Mr. Zipkin to offer the amount that Mr. Zipkin and Mr. Maloney had previously agreed they would convey and recommend to their clients?

3. Does Mr. Maloney admit that, during that same conversation, he asked Mr. Zipkin to contact Tom Matthews, representing Integrity Insurance Agency, to see whether Integrity would agree not to seek attorney's fees against Ms. Bozeman?

4. If Mr. Maloney admits that he did ask Mr. Zipkin to call Mr. Matthews, what possible reason does Mr. Maloney now give for making that request -- unless Mr. Maloney did, in fact, say to Mr. Zipkin that he <u>did have</u> his client's authorization to settle but did not want to face a motion for attorney's fees from Integrity (since that would

USDC Case No. 3:05-cv-178-JKS   <u>Bozeman v. Progressive Casualty</u>
Reply to Opposition to Motion to Enforce Settlement
Page 2 of 11

potentially lower the net amount Ms. Bozeman would receive by way of settlement).

All of the corroborative evidence presented to the court in this matter <u>supports</u> Progressive's position that the parties did reach an enforceable settlement agreement on January 3, 2006.  For reasons known only to him, Mr. Maloney has chosen to reveal only one-half of the story.

Mr. Maloney's affidavit only addresses the initial conversations regarding settlement and conveniently ignores the follow-up conversation he had with Mr. Zipkin.  <u>See</u> Exhibit 1 (DE#40).  To the extent that Mr. Maloney does address the sequence of events, he confirms the parties' course of conduct.  He and Mr. Zipkin discussed settlement in this matter and reached agreement on the specific amount ($25,350) that both attorneys agreed that they would ask their clients to approve.[1]  <u>See</u> Exhibit 1 at ¶3 and Exhibit A at ¶¶3-4.  The specific conversation where that occurred was on December 30, 2005.  Notably absent from plaintiff's Opposition is anything discussing the critical events which took place on January 3, 2006.

---

[1] Contrary to plaintiff's opening remarks, Progressive is not "publishing confidential settlement negotiations."  Opposition at 1.  Progressive is seeking to enforce the settlement contract.  A settlement, even in litigation, is an enforceable contract.  <u>Industrial Commercial Elec., Inc. v. McLees</u>, 101 P.3d 593, 597 (Alaska 2004) (settlement agreements and releases are like any other contracts).  In order to enforce the contract, however, the court must be aware that a contract was formed and of the terms of the contract.  Progressive provided nothing more than was necessary to establish that a contract had been entered into and the terms of that contract.

USDC Case No. 3:05-cv-178-JKS   <u>Bozeman v. Progressive Casualty</u>
Reply to Opposition to Motion to Enforce Settlement
Page 3 of 11

Based on the undisputed agreement of counsel to propose settlement to their clients at $25,350, Mr. Zipkin called Mr. Cort Chambers at Progressive on January 3, 2006, and discussed the agreed-upon settlement proposal. See Exhibit B, Affidavit of Cort Chambers. Mr. Chambers specifically authorized Mr. Zipkin to accept this proposal. Id. Mr. Zipkin then called plaintiff's attorney, Mr. Maloney, to convey Progressive's willingness to settle at the suggested amount and to confirm that Mr. Maloney had received the same settlement authority from plaintiff. Exhibit A at ¶5. Mr. Maloney specifically confirmed to Mr. Zipkin that he had such settlement authority. Id. Mr. Maloney specifically told Mr. Zipkin that Ms. Bozeman had authorized him to settle her claim for Progressive's payment of $25,350, in exchange her signed release. Id.

> I then called Mr. Maloney and told him that I had settlement authority at $25,350 and I asked him if he had authority from his client to settle at that number. Mr. Maloney told me that he did have such authority. He expressly confirmed that his client would sign a release that would protect my client with respect to any liens against the settlement funds, that the settlement would result in the dismissal of his client's claim against Progressive Casualty, and that his client would dismiss with prejudice the separate lawsuit filed by his client against Kenneth Linville, Jr. (the allegedly uninsured tortfeasor) in Case No. 3AN-05-5911 CI.

USDC Case No. 3:05-cv-178-JKS   Bozeman v. Progressive Casualty
Reply to Opposition to Motion to Enforce Settlement
Page 4 of 11

Id. (emphasis added).  "Mr. Maloney expressly confirmed to me that he had his client's authority to settle for that amount." Exhibit C at ¶4, April 10, 2006, Affidavit of Gary A. Zipkin.

As indicated above, Ms. Bozeman's Opposition simply avoids discussion of the January 3, 2006 conversation between Gary Zipkin and Dennis Maloney.  While it acknowledges the events leading up to the settlement that was reached on January 3, 2006 -- the first half of the story -- it simply does not address the January 3, 2006 conversation -- which represents the second half of the story.

Contrary to Mr. Maloney's representations, at no time following January 3, 2006, did Progressive or Mr. Zipkin represent or confirm that a settlement had not been reached.  See Opposition at 3.  Mr. Maloney has presented handwritten notes purportedly taken during a telephone conversation on January 30, 2006, in which the parties allegedly discussed further mediation of this matter.  Id.  Those notes in no way refute Progressive's arguments.  However, Mr. Zipkin made no such comments.

> In that conversation and in every subsequent conversation I have had with Mr. Maloney, I have reminded him that we already settled this case and that his refusal to honor that settlement might very well result in a motion to enforce it.  At no time have I ever told him, or implied to him, that no settlement was reached on January 3, 2006.

USDC Case No. 3:05-cv-178-JKS   Bozeman v. Progressive Casualty
Reply to Opposition to Motion to Enforce Settlement
Page 5 of 11

Id. At all times since January 3, 2006, Mr. Zipkin has steadfastly maintained that the parties agreed to settle on January 3, 2006 despite plaintiff's attorney's disavowal of the settlement. Following the January 3, 2006, Mr. Zipkin never "continued settlement negotiations" with plaintiff's attorneys. There was no reason to; the parties had already settled. Notably, plaintiff's cannot corroborate her recollection of the January 30, 2006 conversation because the hand written notes provided to the court are undated. There is, in fact, no admissible authentication of such notes. "Statements of counsel in memoranda or argument are not evidence." In re J.R.S., 690 P.2d 10, 20 n.1 (Alaska 1984) (citing Weaver Brothers, Inc. v. Chappel, 684 P.2d 123, 126 (Alaska 1984)).

The fact of the matter is that Mr. Maloney's call to Mr. Zipkin on January 30, 2006 was in direct response to Mr. Zipkin's letter of January 27, 2006, asking Mr. Maloney to honor the settlement the parties had reached on January 3, 2006. See Exhibit A at ¶11 & Exhibit C at ¶10. At that time, Mr. Maloney denied that he had agreed to settle the case and suggested that Progressive should pay a new and greater amount. Id. At no time, however, did Mr. Zipkin agree that no settlement had occurred. Rather, "[i]n that conversation and in every subsequent conversation," Mr. Zipkin has "reminded [Mr. Maloney] that [the parties] already settled this case." Exhibit C at ¶10.

USDC Case No. 3:05-cv-178-JKS   Bozeman v. Progressive Casualty
Reply to Opposition to Motion to Enforce Settlement
Page 6 of 11

Mr. Maloney now professes that the settlement terms were not even communicated to Ms. Bozeman until January 11, 2006. However, Mr. Maloney had already asked Mr. Zipkin to call Integrity's attorney, Tom Matthews, to ask him not to file a motion for attorney's fees and it makes no sense for Mr. Maloney to have made such a request if it was not linked to the settlement agreement entered into on January 3. Then, on January 6, 2006, after receiving Integrity's motion for attorney's fees, Mr. Maloney called Mr. Zipkin to inform him that Ms. Bozeman was no longer willing to honor the settlement agreement because she was now facing Integrity's motion for attorney's fees. See Exhibit A at ¶9. How could Mr. Maloney have had the authority to **reject** a settlement that he now professes to have not even discussed with his client for another five days?

Progressive remains ready and willing to consummate the agreed-upon settlement and to prepare the necessary settlement check. Progressive also has a release (the actual "settlement agreement") ready for plaintiff's signature. See Exhibit D attached hereto. However, since the settlement on January 3, 2006, plaintiff's attorneys have repeatedly disavowed the settlement and have tried to add new conditions to the settlement.[2] See Exhibit C at ¶8. Requesting a settlement check or sending a release for a settlement that plaintiff's attorney

---

[2] Plaintiff fully acknowledges that they have repeatedly disavowed the settlement by admitting they have told Progressive's attorneys they were "mistaken on a number of occasions." Opposition at 2.

USDC Case No. 3:05-cv-178-JKS   Bozeman v. Progressive Casualty
Reply to Opposition to Motion to Enforce Settlement
Page 7 of 11

disavows would be pointless.  In fact, if Progressive's attorneys had gone ahead and ordered the settlement check, plaintiff's attorney would now simply be arguing that Progressive was manufacturing self-serving evidence.

In further support of its motion, Progressive provides as Exhibit B hereto the Affidavit of Cort Chambers describing briefly the series of events leading up to the settlement in this matter.  As indicated in that affidavit, Mr. Chambers corroborates Mr. Zipkin's affidavit by confirming that he gave Mr. Zipkin the requested authority after having learned from Mr. Zipkin that he and Mr. Maloney had agreed to convey and recommend settlement at $25,350.  The affidavit further confirms that Mr. Zipkin called Mr. Chambers back on January 3, 2006, to advise him that he and Mr. Maloney had reached a settlement agreement on that same day, January 3, 2006.  Finally, Mr. Chambers confirms that he then heard back from Mr. Zipkin that Mr. Maloney wanted to amend the settlement agreement by including the condition that Integrity Insurance not be award any attorney's fees against Ms. Bozeman.

Mr. Maloney mischaracterizes Mr. Zipkin's affidavit in an attempt to mislead the court.  There is no equivocation.  On January 3, 2006, the parties reached an arms-length settlement agreement to settle all claims in all related matters for $25,350 and a full release of claims.  <u>See</u> Exhibits A & C.  Prior to the

USDC Case No. 3:05-cv-178-JKS   <u>Bozeman v. Progressive Casualty</u>
Reply to Opposition to Motion to Enforce Settlement
Page 8 of 11

settlement, Progressive discussed this settlement proposal with its attorneys. See Exhibit B. Mr. Zipkin then communicated Progressive's agreement to pay $25,350 in settlement and specifically confirmed plaintiff's agreement to the settlement terms the same day. See Exhibits A & C. It was only after agreeing to the settlement terms that Mr. Maloney tried to modify the agreement by making it contingent on Integrity not seeking a fee award; Progressive refused to modify the already made agreement. See Exhibit A at ¶5. As Mr. Zipkin told Mr. Maloney, Progressive's payment of $25,350 to settle this matter was entirely independent of the possibility that Integrity would seek and obtain attorney's fees. Id. Nevertheless, Mr. Zipkin agreed, as a favor to plaintiff's attorneys, to ask Integrity's attorneys if they would be willing to waive their attorney's fees claim. Id. They were not. Id. Nothing, however, changed the fact that the parties had already reached a settlement in this matter.

Contrary to plaintiff's arguments, this motion is not a sham. It is not vindictive. It is not a "sword." This motion is simply an attempt to enforce the agreement that Progressive entered into in good faith and in the belief that, when Mr. Maloney said that he had his client's authority, he meant it. The parties entered into a binding and enforceable contract through their attorneys on January 3, 2006. Progressive is not prepared to allow plaintiff's attorney to pretend that he did not

USDC Case No. 3:05-cv-178-JKS   Bozeman v. Progressive Casualty
Reply to Opposition to Motion to Enforce Settlement
Page 9 of 11

enter into a binding agreement. Progressive is well aware that, if it or its attorneys ever attempted to do what plaintiff's attorney is now attempting, plaintiff's attorney would be screaming to enforce the settlement <u>and</u> to obtain sanctions. Progressive seeks no sanctions. It simply asks that the settlement be enforced. Nothing more, nothing less.

In her conclusion, plaintiff professes a desire to settle this matter with Progressive and that, "as an act of good faith" plaintiff will allow Progressive to withdraw its motion and will negotiate in good faith. However, the parties already negotiated and settled this case. If plaintiff is now prepared to act in good faith, plaintiff should live up to the bargain already agreed to and then this motion will gladly be withdrawn. Until plaintiff is prepared to act in good faith and honor the settlement agreement, Progressive must seek the court's assistance in enforcing the settlement between the parties.

USDC Case No. 3:05-cv-178-JKS   <u>Bozeman v. Progressive Casualty</u>
Reply to Opposition to Motion to Enforce Settlement
Page 10 of 11

DATED at Anchorage, Alaska, this 14th day of April, 2006.

                                        GUESS & RUDD P.C.
                                        Attorneys for Defendants

                              By:     S/Gary A. Zipkin
                                     Guess & Rudd P.C.
                                     510 L Street, Suite 700
                                     Anchorage, Alaska  99501
                                     Phone: 907-793-2200
                                     Fax:   907-793-2299
                                     Email: gzipkin@guessrudd.com
                                     Alaska Bar No. 7505048

CERTIFICATE OF SERVICE
I hereby certify that on the
11th day of April, 2006, a copy
of the foregoing document was served
by U.S. Mail on:

P. Dennis Maloney, Esq.
2525 "C" Street, Suite 425
Anchorage, Alaska 99503

Guess & Rudd P.C.


By:    /s/Gary A. Zipkin

USDC Case No. 3:05-cv-178-JKS   Bozeman v. Progressive Casualty
Reply to Opposition to Motion to Enforce Settlement
Page 11 of 11